## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE  DIVISION

| | | |
|---|---|---|
| **TAMAR D. HARVEY,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:20CV00405 |
| | ) | |
| v. | ) | **OPINION** |
| | ) | |
| **LAURA E. MAUGHAN, ET AL.,** | ) | By:  James P. Jones |
| | ) | United States District Judge |
| Defendants. | ) | |

*Tamar D. Harvey, Pro Se Plaintiff.*

Plaintiff Tamar D. Harvey, a Virginia inmate proceeding pro se, has filed a civil rights action under 42 U.S.C. § 1983, alleging that certain individuals involved in a prior civil rights action filed by him in this court altered video footage relevant to his claims.  After review of the Complaint, I conclude that the action must be summarily dismissed as frivolous and for failure to state a claim upon which relief may be granted.

I.

In March of 2018, Harvey filed a Complaint under § 1983 in this court naming some two dozen defendants and asserting multiple claims that officials of the Virginia Department of Corrections ("VDOC") had violated his constitutional rights in various ways.  Some of the claims were dismissed.  Some remaining claims center on this set of alleged events:

> [O]n July 21, 2017, . . . Harvey was attacked by another offender, Poe, who used a padlock and razor blade during the attack. Harvey suffered injuries, including lacerations to his face, and was taken to the emergency room at the local hospital, where he received stiches and medical tests were performed. Later the same day, he was returned to [Augusta Correctional Center ("ACC")], where he was then kept in ACC's medical infirmary and under observation for 17 days: from July 21 through August 7.

*Harvey v. Landauer*, No. 7:18-cv-00097, 2020 WL 3799197, at *1 (W.D. Va. July 7, 2020) (Dillon, J.). Harvey asserts that defendants Whitlock, Russell, and Woodson failed to protect him from Poe's assault despite the fact that they had allegedly been informed in writing of verbal threats Harvey had received "of serious bodily harm by the hands of multiple prisoners"; on these allegations, Judge Dillon denied defendants' motion to dismiss. *Id.* at *6. The 2018 *Harvey* case is proceeding toward trial, although motions for summary judgment are pending.

In the course of that case, Harvey litigated a separate contention that prison officials and their attorneys altered video footage of Poe's attack and its aftermath. United States Magistrate Judge Joel C. Hoppe summarized Harvey's contentions about the alleged misconduct regarding the video footage as follows:

> In a series of motions, Harvey asks for relief based on his allegations that Defendants failed to produce video clips as ordered by the court in a July 24, 2018 order (Dkt. No. 44) and that they and their counsel, in particular, have tampered with clips they did produce and provided to the court. Specifically, Harvey alleges that defendants tampered with the videoclips to remove all of the blood from his white t-shirt in several of the video clips. He also claims that they tampered with them to remove the "puddle of blood" on the floor referenced in one of the nurse's notes. He does not explain why he believes the clips

should show the blood he references, or how defendants would have accomplished this tampering and the "faking" of the video clips. Moreover, the VDOC Defendants have provided sworn testimony regarding the videos produced in response to the court's order, as well as [an] acknowledgement form from Harvey that the footage was shown to him. (Dkt. No. 51-1, 57.) Additionally, the VDOC Defendants filed a response to Harvey's motion for sanctions which includes counsel's express representation "that the videos submitted to Harvey were in no way altered prior to their production" and that "counsel received the video footage from the facility and produced it to Harvey in response to the Court's order." (Dkt. No. 131.)

In his first motion (Dkt No. 91), Harvey asks for an order establishing all of the facts as raised deemed admitted as a sanction for alleged discovery abuses by the VDOC Defendants. In other motions, he again requests sanctions. (Dkt. Nos. 126, 174). He also asks for an evidentiary hearing, at which defense counsel would be required to testify. (Dkt. Nos. 127, 128, 129.)

Harvey's naked and speculative assertion that defendants or their counsel tampered with the videotapes, absent any additional information or proof supporting that assertion, is insufficient to refute defendants' sworn allegations or counsel's representations to the court as officers of the court. Harvey accuses them of misconduct, but presents no factual information to show that the particular video clips produced should show his bloody t-shirt or a puddle of blood on the floor, or to show how the tampering was accomplished or by whom.

Accordingly, I conclude that discovery sanctions are not warranted, particularly absent some allegation that raises the likelihood of tampering above pure speculation. Sanctions may not be imposed absent a finding that there has been a violation of the discovery rules or a court order. *See generally* Fed. R. Civ. P. 37(b). Harvey's motions asking for sanctions on the grounds that the videotapes are fraudulent, (Dkt. Nos. 91, 126, 174), asking for an evidentiary hearing on the issue, (Dkt. No. 127), and asking for summonses to be issued to counsel for the VDOC Defendants requiring them to appear at said hearing (Dkt. Nos. 128, 129) are therefore DENIED.

Order at 2–3, *Harvey v. Landauer,* No. 7:18-cv-00097 (W.D. Va. Sept. 6, 2019), ECF No. 198.

Within fourteen days of Judge Hoppe's Order, Harvey filed objections to the findings and denial of his motions regarding the video clips. Judge Dillon reviewed the objections, noting that she could modify or set aside the Order only if it was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

> In his objections to this ruling, Harvey claims that Judge Hoppe "ignores" the "facts" set forth in Harvey's petition writ of mandamus (Dkt. No. 156). Harvey then reiterates that his "evidence" of the tampering comes from documentation in his medical chart from Nurse Woodward. (Objs. 3; *see also* Dkt. No. 234 at 2.) Specifically, in a treatment note dated July 21, 2017, at 1:15 p.m., Woodward wrote that she was "called to the 2nd floor stairway in regards to an offender altercation" and that she observed Harvey "sitting on the lower step with his head in his hands holding a shirt." (Dkt. No. 140-1, at 1.) The note, which was referenced in general terms by Judge Hoppe, then continues: "Multiple drops & puddles of blood noted in hallway, on steps & clothing." (*Id.*) From this, Harvey concludes that the video clips must have been altered because he says they do not reflect the puddles or drops of blood she noted.

> Harvey also insists that, contrary to Judge Hoppe's assertion, he has shown "how" defendants accomplished the tampering and the faking of video clips, claiming—in conclusory terms only—that they had a meeting of the minds and conspired. As further evidence of the conspiracy, he claims that it took two weeks for him to receive Judge Hoppe's order—which was mailed by the court. (Objs. 4–5.) His objections go on to make general accusations of bias against Judge Hoppe—all stemming again from his order—and to mischaracterize the record in stating that Harvey "already got rid of one bias[ed]" U.S. Magistrate Judge, the prior judge assigned to this case.

Mem. Op. & Order at 6–7, *Harvey v. Landauer*, No. 7:18-cv-00097, ECF No. 285 (footnotes omitted).[1]

Judge Dillon concluded that Harvey's motions and allegations failed to show any bias on Judge Hoppe's part or that the judge's "ruling was erroneous, let alone clearly erroneous or contrary to law." *Id.* at 7. Specifically, based on her own review of the challenged video clips, Judge Dillon saw "absolutely no evidence of tampering." *Id.*

> The first clip shows an entryway ("the Entryway Clip"), and it does not show any portion of the altercation, but it does show correctional officers and medical personnel responding to the incident. It also shows Harvey being pushed in a wheelchair afterward. As he is pushed in the wheelchair, he is wearing a white t-shirt, but his face and the upper half of his torso are covered by a blue shirt that he is holding to his face.

> The second clip shows the stairwell where the altercation occurred ("the Stairwell Clip"), although much of the altercation itself is off-camera. The Stairwell Clip clearly shows that there was an altercation and that there was blood in many places in the general vicinity. For example, there is visible blood all over the hand of Harvey's assailant in one of the frames, and there is a large area of blood on Harvey's t-shirt visible after the altercation. Moreover, there are dark spots on the floor after the altercation that were not there beforehand. Additionally, it is significant that the primary area where the altercation actually occurred was off-camera, and the floor of that

---

[1] Harvey also suggested that the magistrate judge was biased because he referred in the singular to a "puddle of blood" being missing, as opposed to "puddles." (Pl.'s Objs. 3, ECF No. 221.) As noted, the nurse's note indeed references "multiple drops & puddles of blood," but the judge's use of the singular term was not material and does not show bias. Contrary to Harvey's statement, there was never any finding of bias regarding Judge Ballou in this case.

area is never visible on the clip. So, in the likely event that some or most of the blood referenced by the nurse was in that area, it would not be visible on the clip in any event. Indeed, the Stairwell Clip shows a number of people gesturing toward that general area (and other areas) where the blood would have been and also shows extensive cleaning of the area afterward, including mopping of the floor.

Thus, as to Harvey's assertion that the video of the floor was somehow edited to not show the "puddles" of blood on the floor referenced in Woodward's note, there is simply no evidence of that. To the contrary, the video reflects what is likely blood on the floor and shows that there was blood on him and on Poe, the other inmate involved the altercation. In short, there is nothing to support Harvey's assertion of tampering.

As for Harvey's assertion that the Entryway Clip of him being wheeled away in the wheelchair does not show the blood all over his t-shirt and thus defendants must have altered it, the court disagrees. Comparing the two clips, the Stairwell Clip shows that nearly all of the blood on Harvey's white shirt was on the top half of his shirt, just below his neck and in the middle of his shirt, rather than to the right or left. In the Stairwell Clip, as he leaves the area, blood is visible on a white item (which appears to be medical gauze), which he is holding to his face and covering with his blue shirt.

As Harvey appears moments later and is wheeled away in the Entryway Clip, the area of his white shirt that had visible blood on it is entirely covered by the blue shirt he is holding up to his face and the white item beneath it. Thus, the reason why the large area of blood on his white shirt, which was visible earlier on the Stairway Clip, is no longer visible is that the area is covered by the blue shirt, not because the video was somehow altered. Moreover, there are darker spots on his t-shirt closer to his stomach (and not covered by the blue shirt) as well as darker spots on the blue shirt covering his face, both of which appear to be blood, although it is not entirely clear because of the quality of the video.

In any event, based on the videos defendants have produced, it would be hard for them to deny that there was substantial blood on the

floor or on Harvey's white shirt. Notably, moreover, it does not appear that defendants have ever denied that there was blood on Harvey's shirt or on the floor, a point which ties into the fact that defendants are not offering these videos for anything at all—as the court addresses next—let alone to support any contention that there was no (or little) blood on the floor or on Harvey's shirt.

In a footnote in his objections (Objs. 11 at n.1), Harvey contends that the VDOC defendants' attorneys have "refused to submit a certificate of authenticity" signed and affirmed by an independent technology expert that the clips are not fake. He reiterates this argument repeatedly in his latest filing on the issue, claiming that counsel cannot authenticate documents and that authentication is required. (*See generally* Dkt. No. 234.) In that filing, titled as a second motion for a "required evidentiary hearing," Harvey also cites to a number of cases to support his argument that an evidentiary hearing on his request for sanctions is required.

The court disagrees that a hearing is required or that authentication of the videos is required at this time. As to a hearing, the court has already addressed the allegedly conflicting note by Nurse Woods. For the reasons already discussed, neither that note no[r] the videoclips themselves support any inference of tampering, so as to warrant a hearing on the issue. And Harvey offers nothing but a blanket and vague allegation of conspiracy to support his allegation that tampering has occurred.

Moreover, defendants have produced the videos in response to a court order, but they have not yet offered them or used them to support any motion nor asked the court to consider them as evidence at all. Thus, unlike the cases cited in Harvey's request for a hearing (Dkt. No. 234), defendants are not "proponents of the video as evidence," at least not at this time. (*Cf.* Dkt. 234 at 3 (citing cases discussing a party's attempt to use unauthenticated evidence).) Without going into detail as to all of the cases cited by Harvey (*see id.* at 3–12), they are distinguishable. In many of them, courts were addressing either a summary judgment motion in which a party was relying on evidence only authenticated by counsel, who had no personal knowledge of the video. In others, the courts were addressing evidentiary objections at trial and concluded that

documents had to be authenticated to comply with Federal Rule of Evidence 901. Those cases do not control the outcome here, which is at a very different procedural posture. In the event that defendants attempt to introduce those videos into evidence, the issue of authentication may arise. But no evidentiary hearing is required where there is nothing other than speculation to support Harvey's allegation that defendants or their counsel tampered with the videos, and defendants are not relying on those videos at all, let alone to argue (as Harvey predicts they will) that there was not blood on the floor or on Harvey's shirt.

*Id.* at 7–11. On this reasoning, Judge Dillon overruled Harvey's objections and denied his motions seeking additional development of the video clip issue.

In May of 2020, Harvey filed this separate lawsuit, contending that various individuals had conspired to alter the video clips at issue in Case No. 7:18-cv-00097. The defendants to the present lawsuit are: VDOC Director Harold W. Clarke; VDOC employees Lieutenant Crystal Whitlock, Frederick Russell, Jr., and John A. Woodson; the VDOC itself, the Commonwealth of Virginia, and the Office of the Attorney General ("AG") of Virginia; and two employees of the AG's Office, attorneys Laura E. Maughan and Ann-Marie C. White. The VDOC defendants are also defendants in Case No. 7:18-cv-0097, and Maughan and White still serve as counsel representing them and other VDOC employees in that case.

Harvey describes the claims in this § 1983 action as follows: "unlawful fraudulent concealment, spoliation of video evidence and intentionally submitting

false affirmations/false sworn statements" to the court.  Compl. 4, ECF No. 1.[2]  He also contends that the defendants failed to offer sufficient authentication of the videos' authenticity as required by Rule 901(a) of the Federal Rules of Evidence. *Id.* at 15.

In support of these claims, he alleges that the defendants conspired to alter the Entryway Clip and the Stairwell Clip to minimize the amount of blood depicted at the scene of the attack and reduce Harvey's chances of a large damages award from a jury.[3]  As he did in litigating the video issue in his other case, Harvey's only evidence that these clips have been altered is his own stated memories of the scene and Nurse Woodson's medical notes indicating her observations of "multiple drops & puddles of blood noted in hallway, on steps & clothing."  Med. Records Attach. 1, *Harvey v. Landauer*, No. 7:18-cv-00097, ECF No. 140-1.

In this case, Harvey also complains that the Staircase Clip does not depict the gloves Poe wore during the attack, which allegedly "contained multiple razorblades and a bulky metal padlock."  Compl. 9, ECF No. 1.  Based on his own memory of

---

[2]  Throughout this Opinion the citations to page numbers of documents in the court's records refer to the ECF page numbers and not the page numbers assigned to the parties' pleadings.

[3]  Harvey admits having no knowledge about whether any one or more of the alleged co-conspirator defendants actually accomplished the video alterations or whether they hired an unspecified "shady tech. expert to do their 'dirty deeds' for them."  Compl. 11, ECF No. 1.

events, Harvey contends that the gloves and weapons "were fraudulently removed from D. Poe's hands and then manually placed in his front shirt pocket" in the version of the Stairwell Clip produced to the court by the defendants.  *Id.*  Harvey claims the clip "boxed[ ]out" or "blurred" Poe's hands in the clip, which later allegedly shows Poe picking up an unspecified weapon before he runs away down the stairs after the attack.  *Id.* at 11.

Harvey contends that the defendants committed a crime, by altering the video and/or then producing false affidavits to assert its authenticity and denying any alterations.  Although Harvey does not name judges as defendants, he faults them for supposed bias and/or allowing the defendants' alleged fraud, concealment, and improper video authentication.  *Id.* at 11, 15–16, 19–20.  As relief in this case, Harvey seeks only monetary damages.  *Id.* at 21.

## II.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(b)(1).  To survive screening under § 1915A, a complaint must plead facts sufficient to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim includes factual content that "allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citations omitted).

Harvey brings his claims under 28 U.S.C. § 1983, a statute that permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). After review of the Complaint and the record of No. 7:18CV00097, I conclude that, liberally construed, Harvey essentially claims that the defendants conspired to alter the video clips to interfere with his constitutional right to access the court in the 2018 case. *See, e.g., DeMeo v. Tucker*, 509 F. App'x 16, 18–19 (2d Cir. 2013) (plaintiff's assertion, that officer who assaulted him also altered, destroyed, or lost video surveillance footage of that alleged assault with help from other defendants, construed as claim that defendants impaired plaintiff's right to access the courts).

As an initial matter, Harvey has no legal basis for § 1983 claims against some defendants he has named. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). This same rule also applies to "governmental entities that are

considered 'arms of the State' for Eleventh Amendment purposes." *Id.* at 70. Because the VDOC and the AG's Office are properly considered arms of the Commonwealth, these entities cannot be sued under § 1983. Therefore, I will summarily dismiss Harvey's § 1983 claims against the Commonwealth, the VDOC, and the AG's Office. The individual VDOC officials and the two attorneys, for actions taken in their individual capacities, are subject to suit under § 1983. For different reasons, however, I must also dismiss Harvey's claims against them.

Harvey simply states no facts supporting the elements of a conspiracy or denial of access to courts claim against anyone.

> To establish a civil conspiracy claim actionable under § 1983, a plaintiff must demonstrate that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy," resulting in deprivation of a federal right. *Glassman v. Arlington Cnty., Va*, 628 F.3d 140, 150 (4th Cir. 2010) (quoting *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996)). A plaintiff must make specific allegations that reasonably lead to the inferences that members of the alleged conspiracy shared the same conspiratorial objective to try to "accomplish a common and unlawful plan" to violate the plaintiff's federal rights. *Hinkle*, 81 F.3d at 421. As such, a complaint's allegations must amount to more than "rank speculation and conjecture," especially when the actions are capable of innocent interpretation. *Id.* at 422. Merely labeling a chronological series of actions by multiple individuals as "conspiracy" or providing only a conclusory, formulaic recitation of the legal elements of conspiracy will not do. *Nemet Chevrolet*[, *Ltd. v. Consumeraffairs.com, Inc.*], 591 F.3d [250,] 255 [(4th Cir. 2009)].

*Snodgrass v. Messer*, No. 7:16CV00050, 2017 WL 975992, at *3 (W.D. Va. Mar. 10, 2017), *aff'd*, 694 F. App'x 157 (4th Cir. 2017) (unpublished).

Where an inmate has had access to court, but alleges denial of specific materials or services related to his preparation of his legal case, the inmate must show that denial of the item or service resulted in specific harm to his litigation of a nonfrivolous claim. *Lewis v. Casey*, 518 U.S. 343, 352–53 (1996). The fact that an inmate may not be able to litigate exactly as he wishes once a known claim is brought before the court is not sufficient to demonstrate the actual injury element of an access to courts claim. *Id.* at 354.

Harvey's conspiracy claims are built on nothing more than general assertions, conjecture, and labels. Harvey fails to state facts supporting a reasonable inference of the essential ingredient for a § 1983 conspiracy claim — a shared conspiratorial plan among the members to accomplish, jointly, a violation of the plaintiff's federal right to access the courts by having video footage altered or otherwise. *Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality" or conspiracy.). I simply cannot find Harvey's allegations sufficient to state a plausible conspiracy claim.

Moreover, for the reasons discussed at length in the opinions by Judge Hoppe and Judge Dillon, Harvey has not stated any facts supporting a reasonable inference that any of the defendants (individually or collectively) had motive, opportunity, or means to accomplish the alterations to the video that Harvey imagines. The defendants have not disputed that the inmate assailant may have had weapons at

some point, that Harvey was seriously injured, or that copious amounts of blood were present at the scene in the aftermath of the altercation.  On the other hand, Harvey has not demonstrated that the surveillance cameras, with their inherent structural limitations and positioning, were physically capable of capturing distinctly the aspects of the scene where he claims to have seen the inmate's weapons and where he and the nurse purportedly viewed the pools of blood.  In short, Harvey offers nothing more than his speculative conjectures that the video footage should show more or different details than it does.  Certainly, he offers only speculation that its failure to meet his expectations is a result of purposeful manipulation of the footage by the defendants, acting as a conspiratorial group.

Furthermore, the defendants have not hampered Harvey's ability to present any of his claims in Case No. 7:18CV00097 that certain officers allegedly failed to protect him against an inmate assault.  The defendants and their attorneys provided him with the video footage he requested.  They have verified that it has not been altered.  If Harvey believes that the footage does not show the full scope of the scene, he is free to testify about the purported discrepancies.  The defendants have not prevented him from describing his memories of the altercation and his injuries, presenting documentation of those injuries, and producing other evidence and witness testimony to the fact finder in support of his claims.  Harvey will also have an opportunity to cross-examine the defendants and their witnesses about the

incident, the video, and the weapons and the amount of blood that they saw at the scene. His contention that the video footage provided to him fails to show every detail he desires to portray to the fact finder does not show a sufficient injury to his litigation efforts to support a § 1983 claim that anyone has denied him access to court.

Finally, I conclude that Harvey's continued insistence that the video footage has been purposely altered to remove items allegedly captured by the cameras in now unavailable, original footage that he has never viewed is fantastical and even delusional. The court must dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915A(b)(2). A "frivolous" claim is one that "lacks an arguable basis either in law or in fact," because it is "based on an indisputably meritless legal theory" or its "factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 325, 327 (1989) (interpreting "frivolous" in former version of 28 U.S.C. § 1915(d)).

My statutory authority to summarily dismiss frivolous complaints includes "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless" or which describe "fantastic or delusional scenarios." *Id.* at 327, 328. Harvey's claims in this

lawsuit fall squarely in this class, and accordingly, I will summarily dismiss the action under § 1915A(b)(1) as frivolous.

A separate Final Order will be entered herewith.

DATED:   February 24, 2021

/s/  JAMES P. JONES
United States District Judge